TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFFREY M. CHEMERINSKY (Cal. Bar. No. 270756)
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
Violent and Organized Crime Section
Assistant United States Attorneys
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-7964
    Facsimile: (213) 894-0141
    E-mail:   joseph.axelrad@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00256-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT MALIK POWELL |
| v. | |
| MALIK POWELL, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jeffrey M. Chemerinsky and Joseph D. Axelrad, hereby files its sentencing position regarding defendant Malik POWELL ("defendant").

    This sentencing position is based upon the attached memorandum of points and authorities, the presentence investigation report ("PSR"), the files and records in this case, and such further evidence and argument as the Court may permit.  The government

respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

Dated: January 31, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

    */s/*
JEFFREY M. CHEMERINSKY
JOSEPH D. AXELRAD
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On the afternoon of March 4, 2021, defendant Malik Powell ("defendant") and his co-conspirators trolled the streets of Beverly Hills searching for someone to rob.  At approximately 2:10 p.m., defendant and two co-conspirators approached an unsuspecting victim seated in the crowded outdoor dining area of the Il Pastaio restaurant in Beverly Hills, California.  Defendant and his coconspirators held a loaded gun at the victim's head while demanding his wristwatch.  A struggle for the gun ensued, during which approximately two rounds were discharged from the firearm, leaving a second restaurant patron shot in the leg.  Defendant and his robbery crew's total and blatant disregard for the safety of their victim, or anyone else for that matter, is simply staggering.

Defendant awaits sentencing after pleading guilty to the three-count indictment charging him with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a), one count of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a), and one count of possess, use, carry, brandish, and discharge a firearm in furtherance of and during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

The United States Probation Office ("USPO") issued the PSR in this case on January 10, 2022, calculating a Guidelines range of 46 to 57 months, based on a total offense level of 23 and a category I criminal history.  Defendant is also subject to an

1  additional 120-month sentence based on his plea to the § 924(c)
2  count, which must run consecutive to any Guidelines sentence.
3       As set forth below, the government submits that, taking
4  into account the factors identified in 18 U.S.C. § 3553(a), a
5  total term of custody of 166 months' imprisonment is
6  appropriate.  The government further recommends that defendant
7  be sentenced to a five-year term of supervised release, and a
8  special assessment of $300.  Such a sentence is sufficient, but
9  not greater than necessary, to reflect the seriousness of the
10 offense, to promote respect for the law, to adequately deter
11 defendant from committing further offenses, and to avoid
12 unwarranted sentencing disparity with other similarly situated
13 defendants.
14 **II.  STATEMENT OF FACTS**
15      Defendant did not enter a plea agreement in advance of his
16 guilty pleas to all counts of the Indictment.  However, the
17 parties did jointly stipulate to factual basis as part of the
18 Joint Status Report, Proposed Factual Basis, Elements, and
19 Penalties for Change of Plea Hearing.  (Dkt. 77.)  As described
20 in the Joint Status Report, which was entered into the record
21 during the change of plea hearing, the facts are as follows:
22          Beginning on a date unknown, and continuing to on
23      or about March 4, 2021, in Los Angeles County, within
24      the Central District of California, defendant
25      conspired and agreed with co-conspirators to commit a
26      robbery affecting interstate commerce.  Defendant
27      entered this agreement knowing of its purpose and
28      intending to accomplish that purpose.  In furtherance

of the conspiracy, and to accomplish its objects, defendant and co-conspirators committed overt acts within the Central District of California, including but not limited to traveling in defendant's black BMW to Beverly Hills, California, on March 4, 2021 for the purpose of committing an armed robbery.

On March 4, 2021, defendant and two co-conspirators approached Victim 1, who was sitting within the outdoor dining area of the Il Pastaio restaurant, located at 400 N. Canon Drive, Beverly Hills, California. Defendant and his co-conspirators, each aiding and abetting the others, knowingly obtained property, namely, a Richard Mille model RM 11-03 Rose Gold Flyback chronograph wristwatch, from or in the presence of Victim 1, by means of robbery, believing that Victim 1 would part with the property because of the robbery. The robbery affected interstate commerce.

The crime of interference with commerce by robbery, in violation of Title 18, United States Code, section 1951(a), as charged in Count Two of the Indictment, is a crime of violence. During and in relation to that crime, defendant and his co-conspirators, each aiding and abetting the others, knowingly used, carried, and brandished a firearm, namely, a black Glock 19 Generation 5, 9mm caliber pistol, bearing serial number BRZC854. In the course

of a struggle during the robbery, at least two rounds were discharged from the firearm.

## III. PRESENTENCE INVESTIGATION REPORT

### A. Guidelines Calculation

The USPO concluded that defendant has a total offense level of 23. PSR, ¶ 36. This results from a base offense level of 20 (U.S.S.G. § 2B3.1(a)), a four-level enhancement for serious bodily injury (U.S.S.G. § 2B3.1(b)(3)(B)), a two-level enhancement based on the value of the watch stolen (U.S.S.G. § 2B3.1(b)(7)(C)), and a three-level decrease for acceptance of responsibility (U.S.S.G. § 3E1.1(a), (b)). PSR, ¶¶ 20-37.

The PSR also identifies defendant as a Criminal History Category of I. PSR, ¶ 43. Based on the calculated criminal history category and total offense level, defendant's applicable Guidelines range is 166-177 months. PSR, ¶ 89. The USPO issued it Disclosed Recommendation Letter on January 10, 2022, and recommends a sentence of 166 months. (Dkt. 91.)

## IV. APPLICATION OF THE § 3553 FACTORS

The government submits that a sentence of 166 months' imprisonment, which is the combination of the low end of the Guidelines' range followed by the 120-month consecutive sentence association with Count Three, as well as five years' supervised release, is "sufficient, but not greater than necessary," to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2).

### A. Legal Background

"All sentencing proceedings are to begin by determining the applicable Guidelines range," which serves as "the starting point and the initial benchmark" for determining a reasonable

4

sentence.  United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotation marks and citation omitted).  The parties should then be given an opportunity to argue for what they believe is an appropriate sentence.  Id.  Following argument by the parties, the Court must consider each of the sentencing factors listed in 18 U.S.C. § 3553(a), including the applicable Guidelines range, "to decide if [those factors] support the sentence suggested by the parties."  Id.; see also Gall v. United States, 552 U.S. 38, 49 (2007).  In the end, the Court must impose a sentence that is "sufficient, but not greater than necessary," to reflect the offense's seriousness, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  See 18 U.S.C. § 3353(a); Carty, 520 F.3d at 991.

**B.   Analysis**

Defendant's participation in this violent offense deserves a serious sanction and punishment.  The use of a firearm to commit an armed robbery creates the potential for a multitude of violent and dangerous outcomes, as shown by the wounding of an innocent victim.  Here, very little would need to have changed for the outcome of defendant's armed robbery to have been even worse.  Defendant and his coconspirators' decision to hold a *loaded* firearm to Victim 1's head is especially troubling.

The disregard defendant and his coconspirator displayed for the safety of Victim 1, the numerous restaurant patrons and bystanders, and, eventually Victim 2, cannot be overstated.

What is more, this type of robbery where firearms are brandished, and discharged, leaves severe, lasting trauma that victims carry with them their entire lives.

Unfortunately, defendant is not a stranger to violent criminal conduct. Defendant is a Rollin 30's Harlem Crip gang member with disturbing convictions for criminal threats and assault, in violation of California Penal Code sections 422 and 245(A)(4), respectively. After learning that his stepfather had been arrested for the robbery of a Shoe Palace store, defendant returned to the store and threatened witnesses not to testify. (PSR, ¶ 42.) On more than one occasion, defendant returned to the store to lodge threats, such as "B*tch Imma bring my gang and burn this mother f**ker down! Imma kill you and your family! We gonna rob this mother f**ker!" and "I could rob all this sh*t if I want. This is my hood b*tch! I'll have my homegirls f**k you up! This is Crib b*tch!" (Id.)[1]

The government recognizes that there are mitigating factors that exist in defendant's personal history and characteristics. Defendant grew up in difficult circumstances. PSR, ¶¶ 49-62. Defendant and his family were exposed to extraordinary violence from a young age, with his father murdered when defendant was only five years old. Id. Throughout his childhood, defendant lacked stability, moved numerous times, and experienced several

---

[1] While defendant's criminal history is a category I, this appears to be more a function of the timing of his federal arrest than anything else. Specifically, defendant has pending charges in Nevada for Conspiracy to Commit Robbery; Burglary While in Possession of Firearm or Deadly Weapon; Robbery with Deadly Weapon Enhancement; and Possess, Receive, or Transfer Stolen Vehicle, (PSR, ¶ 45); and in Los Angeles for felon in possession of a firearm (PSR, ¶ 46).

periods of homelessness. Defendant has also struggled with a variety of addictions.

The requested sentence serves the goals of both specific and general deterrence. As to specific deterrence, as mentioned above, the requested sentence, will be defendant's lengthiest term of imprisonment. This sentence also serves the purposes of general deterrence by making clear that gun crimes are punished severely.

Finally, the government believes that the requested sentence avoids unwarranted sentencing disparities with other defendants in similar circumstances as defendant. The Court is entitled to rely on a correctly calculated Guidelines' range in finding that there is no unwarranted disparity between defendant and other offenders convicted of similar offenses. United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010).

All of these factors are accounted for in the government's recommendation, which balances the history and characteristics of the defendant with the nature of the crimes. For these reasons, the government believes that a sentence of 166 months in custody is appropriate.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to: (1) 166 months' imprisonment; (2) a five-year period of supervised release; and (3) a mandatory special assessment of $300.